FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 25  PM 4: 51

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAMIKA J. GOFFNER** | **CIVIL ACTION** |
| **VERSUS** | **NO:     04-2463** |
| **JO ANNE B. BARNHART**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION: "B" (4)** |

## REPORT AND RECOMMENDATION

### I.    Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied Shamika Goffner's Supplemental Security Income ("SSI") Benefits under Title XVI of the Social Security Act, Title 42 U.S.C. § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### II.    Factual and Procedural Summary

Samantha Goffner originally filed this action on behalf of her daughter Shamika seeking childhood Title XVI benefits when Shamika was sixteen. (Tr. 217).[1] Samantha Goffner alleged that

---

[1]Shamika Goffner pursues her action in this Court in her own name.

____ Fee_____
____ Process_____
_X_ Dktd_____
____ CtRmDep_____
____ Doc. No _____

Shamika has been disabled since January 1, 2001 from a learning disorder and also has behavioral problems. (Tr. 38, 39-40, 48). Her claim was denied initially and on reconsideration. She then requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ held a hearing on December 13, 2002, and on February 19, 2003, the ALJ denied Samantha Goffner's protective request for SSI.[2] In denying the benefits, the ALJ found that although Shamika's impairments were severe, she did not have an impairment or combination of impairments that met, equaled, or functionally equaled any listing. (Tr. 23, Findings 4, 11). The ALJ further found that Shamika had less than marked impairment in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for herself and also regarding her health and physical well being. (Tr. 23, Findings 5-11).

Samantha Goffner sought review of the ALJ's decision but the Appeals Council denied review on July 1, 2004. (Tr. 11-13, and 5-7). Shamika Goffner (hereinafter "Goffner") then filed a complaint in this Court seeking review of the administrative proceeding. (Rec. Doc. No. 1). Both parties submitted their briefs for consideration by the Court. (Rec. Doc. Nos. 6 and 7).

III.   **Issues**

    A.    Is the ALJ's decision based on substantial evidence because he did not properly perform a listing analysis and consider the treating evidence?

    B.    Is the ALJ's decision based on substantial evidence because he did not find that Shamika's condition functionally equaled a listing?

IV.   **Standard of Review**

    A.    **Statutory and Regulatory Framework**

_____

[2]At the time of the hearing, Shamika was 16 years old.

The Social Security Act provides that a child under the age of 18 is "disabled" for purposes of SSI eligibility if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less *than 12* months." 42 U.S. C. § 1382c(a)(3)(C)(I).

The Commissioner follows a three step process in determining childhood disabilities. *See* 20 C.F.R. § 416.924 (2004). A child qualifies for SSI benefits if the Commissioner determines that (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. Pt. 404, Supbpt.P, app.1 (" listed impairments") and meets the durational requirement.

### B. <u>Judicial Review</u>

The role of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards when evaluating the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court cannot re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). It must do more than create a suspicion of the existence of the fact to be established. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*,

483 F.2d 1137, 1138 (5th Cir. 1973). A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history." *Hendricks v. Apfel*, No. 99- Civ.A.-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000)(citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

For mental impairments, an additional regulatory process supplements the five-step process detailed above. *Plummer v Apfel*, 186 F.3d 422, 428 (3d. Cir. 1999). It requires the hearing officer to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in the case record to determine if a mental impairment exists. *Id.* If an impairment is found the examiner analyzes whether certain medical findings relevant to a claimant's ability to work are present or absent. *Id.* The examiner then rates the degree of functional loss resulting from the impairment in certain areas deemed essential for work.[3] *Id.*

If the mental impairment is considered "severe", the examiner must determine if the impairment meets a listed disorder. The examiner then conducts a residual functional capacity assessment. *Id.* At all adjudicative levels, a Psychiatric Review Treatment ("PRT") Form must be

---

[3]§ 404.1520a(c)-(d) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are: daily living, social functioning concentration, persistence or pace, and deterioration, and episodes of decompensation. The degree of limitation in the first three functional areas are rated on a scale that ranges from no limitation to severe. The degree of limitation in the fourth functional area (episodes of decompensation), is rated on the following four-point scale: none, one or two, three, four or more. This information is detailed in the Psychiatric Review Treatment form.

completed. *Id.* at 429.  This form outlines the steps of the mental health evaluation in determining the degree of functional loss suffered by the claimant. *Id.*

**V.  <u>Analysis</u>**

      **A.  <u>Listing Analysis</u>**

      Goffner contends that the ALJ failed to perform the third step of determining whether a childhood disability exists, i.e., determining whether the child's impairment meets or equals a listed impairment, which hampered his ability to conduct a meaningful review.  Goffner further contends that the ALJ did not reference significant evidence in the opinion supporting his determination that she did not meet the 112.08 Listing Level requirements for Personality Disorder  found at 20 C.F.R. Pt. 404, Supbpt.P, app.1.

      The Commissioner contends that the ALJ evaluated the specific medical evidence in the record that supported his decision and the record supports his conclusion that she did not meet the 112.08 listing.  The Commissioner further contends that the ALJ was not required to explicitly discuss all the evidence that supported the decision or all the evidence that was rejected by the decision.

      According to the record, the ALJ noted that Samantha Goffner's application contended that Goffner was disabled due to a learning disorder and psychological impairments.  He found that Goffner had a learning disorder. (Tr. 19).  However, he concluded that the learning disorder did not meet or medically equal any listing. (Tr. 23).

      The ALJ failed to mention in the opinion whether he considered Goffner's psychological impairments.  However, the record shows that Goffner was diagnosed with oppositional defiant

disorder[4] (falling under listing level 112.08 personality disorder), attention deficit disorder (listing level 112.11), and depressive disorder (listing level 112.02 ).  (Tr. 163-165).  The ALJ further did not include any analysis of any of the listing levels noted above.

Here, the ALJ simply asserts that Goffner does not satisfy the listings.  Each listing had major requirements, yet the ALJ does not indicate which of the requirements for each of these listings was not met. The Court notes that Goffner only contends that the ALJ did not support his finding that she did not meet the 112.08 listing level requirement.  Therefore this Court will consider whether there is sufficient evidence that the ALJ properly considered whether she met the listing level requirement of 112.08.

Listing level 112.08 *Personality Disorders* is defined as:

[m]anifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.

1.      The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

       A.      Deeply ingrained, maladaptive patterns of behavior, associated with one of the following:

              1.      Seclusiveness or autistic thinking; or

              2.      Pathologically inappropriate suspiciousness or hostility; or

              3.      Oddities of thought, perception, speech, and behavior; or

              4.      Persistent disturbances of mood or affect; or

              5.      Pathological dependence, passivity, or aggressiveness; or

              6.      Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or

---

[4]Symptoms of Oppositional Defiant Disorder may include:  frequent temper tantrums ,excessive arguing with adults, active defiance and refusal to comply with adult requests and rules, deliberate attempts to annoy or upset people, blaming others for his or her mistakes or misbehavior, often being touchy or easily annoyed by others, frequent anger and resentment, mean and hateful talking when upset, seeking revenge. *See* Health A to Z, Oppositional Defiant Disorder, http://www.healthatoz.com/healthatoz/Atoz/ency/oppositional_defiant_disorder.jsp

    7.     Pathological perfectionism and inflexibility;

         AND

B.     For..... children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Level 112.02 B(2) provides that:

for children (age 3 to attainment of age 18), resulting in at least two of the following:

a.     Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b.     Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c.     Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d.     Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.

The record shows that the ALJ found that Goffner was diagnosed with oppositional symptoms consisting of her fighting with her peers, arguing with adults, and having legal problems. It is unclear if he determined whether or not she demonstrated maladaptive behavior consistent with listing level 112.08 because he did not analyze whether she met one of the factors required in 112.08(1)(A). The opinion therefore does not indicate that the ALJ found she suffered with a

personality disorder as set forth in 112.08.

Despite not determining that Goffner met the 112.08(A)(1) requirements, the ALJ concluded that she met at least one of the factors listed in 112.02(B)(2) because he concluded that she was markedly impaired socially.  He also apparently attempted to evaluate whether she was deficient in concentration, persistence, and pace as he found that her concentration could not be measured because of her lack of cooperation which he construed as malingering.[5]

Deficiencies of concentration, persistence, or pace are defined as deficiencies resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere).  20 C.F.R. § 404 Subpt. P, App.1 12.00(C)(3).  "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100."  *Id.*  "In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."  *Id.*

The consultative report of the psychiatrist indicates that her memory was tested and the evaluator felt that she was not cooperative.  However no serial sevens or serial threes test were administered.  Nor does the evaluative report show that she was given a task to be completed within an established time.

Dr. Carmen Ramos performed a psychiatric evaluation on Goffner in 2001.  (Tr. 151).  He found that she was in need of treatment as she might have an underlying depression or underlying psychotic condition.  (Tr. 154).  Dr. Ramos further found that while there was evidence of malingering during the interview, Goffner had "sufficient serious problems" which indicate that she

---

[5]The Court notes that one of the symptoms of Oppositional Defiant Disorder is "often actively def[ying] or refus[ing to]comply with adults' requests or rules," which, could be construed as "malingering."  *See* Oppositional Defiant Order, *supra*, n.4.

has difficulty functioning in a variety of areas. (Tr. 154). Yet, the ALJ did not consider either of Dr. Ramos's recommendations or findings in his opinion.

Oddly, despite evidence in the record that Goffner might be suffering with depressive disorder in addition to the 112.08 personality disorder, there is no record indicating that the ALJ considered whether she met the listing level requirements for depressive disorder as set forth in listing level 112.02.

It is well settled that a failure to evaluate and provide specific reasons for rejecting probative evidence constitutes grounds for a remand to the secretary.   *Thompson v. Sullivan,*  741 F, Supp. 1297,1301 (N.D. Ill.1990).  Further, while the Court recognizes that it is its function to determine whether the ALJ's findings are supported by substantial evidence,  this task is impossible where, as here, no reasons are  provided and no analysis of all the evidence is clearly stated.  *Dantin v. Apfel*, No. 97-Civ.A.-1835, 1998 WL 397896, at *3(E.D.La.. July 10, 1998).  Because the Court cannot determine whether the ALJ appropriately considered whether Goffner met the listing level requirements for 112.08, 112.02, or 112.11, it is Ordered that the ALJ's opinion be reversed and remanded for further consideration of the evidence in a manner consistent with the regulations.

## VI.   Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Shamika Goffner's Supplemental Security Income Benefits be **REVERSED** and **REMANDED** for further consideration of the evidence as indicated earlier in this opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 25th day of January 2006.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

10